## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **ROBERT EMPEROR** and **COLT MONROE**, individually, and on behalf of others similarly situated, | Case No.: |
| Plaintiffs, | Hon.: |
| vs. | |
| **CRESCO LABS, LLC**, a limited liability company, and **JDRC MANAGED SERVICES, LLC**, a limited liability company, | |
| Defendants. | |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, ROBERT EMPEROR and COLT MONROE ("Plaintiffs"), hereby bring this Collective and Class Action Complaint against Defendants, CRESCO LABS, LLC and JDRC MANAGED SERVICES, LLC ("Cresco" or "Defendants"), and state as follows:

### INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Cresco, arising from Cresco's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law ("IMWL"), §§ 820 ILCS 105/1, *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), §§ ILCS 115/1, *et seq.*

2.      Cresco "is one of the largest vertically-integrated multi-state cannabis operators in

the United States."[1] As such, Cresco is "involved at every point in the seed-to-sales process[,]" which includes cultivating, manufacturing and selling/"distribut[ing] [Cresco's] products nationwide, including locations owned and operated by [Cresco]."[2]

3.      According to Cresco's website, Cresco has 21 production facilities, over 51 licenses and 51 owned dispensaries.[3] Additionally, Cresco operates in the following seven states: Arizona, Florida, Illinois, Massachusetts, New York, Ohio, and Pennsylvania.[4] Within the state of Illinois, Cresco operates 10 dispensary locations. *Id.*

4.      In its effort "to lead the nation's cannabis industry[,]" Cresco employed non-exempt employees, with job titles including, but not limited to, Cultivation Agent, Cultivation Team Lead, Curing Agent, Processing Trimmer and Processing Agent (the "Cultivation and Processing Employees"). These employees were responsible for, *inter alia*, providing on-site cultivation for one or more cannabis gardens, maintaining cannabis gardens, curing cannabis beds, processing harvest materials, and participating in the shipment of Cresco's cannabis.

5.      Cresco employed Plaintiffs as Cultivation and Processing Employees in Illinois within the last three (3) years.

6.      Due to the nature of its operations, Cresco required Plaintiffs and similarly situated employees to wear company-issued protective clothing and safety equipment during their work shifts in order to protect the cannabis and cannabis products from contamination, and to comply with federal and state governmental safety, health, and food regulations and mandates. The company-issued protective clothing and safety equipment included protective shoes, scrubs,

---

[1] Cannabis, also known as marijuana among other names, is a psychoactive drug from the Cannabis plant used primarily for medical and recreational purposes; *See* https://boards.greenhouse.io/crescolabs/jobs/6294795002 (last visited September 14, 2022).
[2] *See* https://www.crescolabs.com/about-cresco/ (last visited September 14, 2022).
[3] *See id.*
[4] *See* https://www.crescolabs.com/retail/ (last visited September 14, 2022).

masks, hair nets, arm sleeves, and gloves ("the PPE").

7.     Cresco required Plaintiffs and similarly situated employees to change into ("don") the PPE at the worksite and *before* clocking in for their scheduled work shifts.

8.     Similarly, Cresco required Plaintiffs and similarly situated employees to change out of ("doff") the PPE at the worksite and *after* clocking out for their scheduled work shifts.

9.     The reason Cresco required Plaintiffs and similarly situated employees to don and doff the PPE at the worksite was to promote a safer and more efficient harvesting and production process and to ensure compliance with federal and state governmental safety, health, and food regulations and mandates.

10.     The mandatory pre-shift and post-shift donning and doffing process was compensable because it was an integral and indispensable part of Plaintiffs and similarly situated employees' principal work activities and because Cresco required it be done at the worksite. Plaintiffs and similarly situated employees could not have completed their assigned work tasks without wearing the PPE.

11.     *Before* obtaining and donning the PPE, Cresco required Plaintiffs and similarly situated employees to stand in line to wait for, participate in, and pass, a mandatory health screening procedure. Cresco's on-site pre-shift health screening procedure was implemented to ensure that cultivation and production operations would continue to operate during the COVID-19 pandemic in the healthiest environment possible.[5]

12.     The on-site pre-shift health screening procedure was integral and indispensable to Plaintiffs and the similarly situated employees' principal duties because it could not be eliminated without impairing their ability to safely harvest and produce contamination-free cannabis products.

---

[5] *See, e.g.* https://www.crescolabs.com/covid19-response/ (last visited September 14, 2022).

Cresco also required that process to occur at the worksite.

13.     After passing the health screening, and before donning the PPE, Plaintiffs and similarly situated employees had to walk to Cresco shipping containers to pick up scrubs (the first gathered item of PPE) to wear for their shift.

14.     Following the scrub collection, Plaintiffs and similarly situated employees walked to the Cresco building and had to swipe a badge to enter it, a function that primarily benefited Cresco by allowing Cresco to monitor access to the facility and the cannabis and cannabis products.

15.     Plaintiffs and similarly situated employees proceeded to collect and don other items of PPE *before* clocking in for their scheduled shift.

16.     At the end of each shift and after clocking out, Plaintiffs and similarly situated employees were required to doff the PPE they wore during their shift before they could retrieve their personal belongings and leave Cresco's facility.

17.     Defendants violated the FLSA by knowingly suffering or permitting Plaintiffs and similarly situated employees to work in excess of 40 hours during a workweek without paying overtime compensation at a rate of 1.5 times the regular rate.

18.     Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class members, were violated, and a judgment awarding them unpaid back wages, liquidated damages, and attorneys' fees and costs to make them and the putative Collective and Class whole for damages they suffered, and to help ensure Cresco will not subject future workers to the same illegal conduct in the future.

19.     At the earliest time possible, Plaintiffs will request a Court-authorized notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employee who worked for Defendants at any time in the past three years.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

20.     This Court has subject matter jurisdiction over Plaintiffs' FLSA claim under 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201 *et seq.*

21.     Additionally, this Court has jurisdiction over Plaintiffs' FLSA claim under 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction…."

22.     Moreover, this Court has original jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 class members, and at least some class members have a different citizenship than Cresco.

23.     Cresco's annual sales exceed $500,000, and Cresco employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Cresco's employees, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

24.     This Court also has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of their federal claims.

25.     This Court has personal jurisdiction over Cresco because Cresco maintains its headquarters in Cook County, Illinois.

26.     Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(1) because Cresco resides in Cook County, Illinois.

27.     Cresco maintains its headquarters in Cook County, Illinois; therefore, this action is

properly assigned to the Eastern Division.

## PARTIES

28.     Plaintiff Robert Emperor ("Plaintiff Emperor") is an Illinois resident and worked for Cresco as a non-exempt Cultivation Agent at Cresco's cultivation facility in Lincoln, Illinois from approximately March 2020 through March 4, 2022. As a Cultivation Agent for Cresco, Plaintiff Emperor regularly worked 40 or more hours per week and was paid an hourly wage, most recently at the rate of $18.50. Plaintiff Emperor signed a consent to join this collective action lawsuit, which is attached as **Exhibit A**.

29.     Plaintiff Colt Monroe ("Plaintiff Monroe") is an Illinois resident and worked for Cresco as a non-exempt Cultivator at Cresco's cultivation facility in Lincoln, Illinois from approximately July 2020 through approximately February 2021. As a Cultivator for Cresco, Plaintiff Monroe regularly worked 40 or more hours per week and was paid an hourly wage, most recently at the rate of $17.00. Plaintiff Monroe signed a consent to join this collective action lawsuit, which is attached as **Exhibit B**.

30.     During the past three years, additional Opt-in Plaintiffs were or are employed by Cresco as Cultivation and Processing Employees and their consent forms will also be filed in this case.

31.     Defendant Cresco Labs, LLC is an Illinois limited liability company (File Number 04569113) with a Principal Office located at 400 West Erie Street, Suite 110, Chicago, Illinois 60654. Defendant Cresco Labs, LLC's registered agent is listed as Cogency Global Inc., 600 South Second Street, Suite 404, Springfield, Illinois 62704.

32.     Defendant JDRC Managed Services, LLC is an Illinois limited liability company

(File Number 05820278) and a wholly-owned subsidiary of Defendant Cresco Labs, LLC.[6]
Defendant JDRC Managed Services, LLC's Principal Office is located at 400 West Erie Street,
Suite 110, Chicago, Illinois 60654 and has a registered agent listed as Cogency Global Inc., 600
South Second Street, Suite 404, Springfield, Illinois 62704.

33.     At all relevant times, Defendants were a common enterprise and "joint "employers"
of Plaintiffs and similarly situated individuals as defined by the FLSA, 29 U.S.C. § 203(d) and 29
C.F.R. 791.2(a).

## GENERAL ALLEGATIONS

34.     Cresco typically paid its Cultivation and Processing Employees at a rate ranging
from $16.00 to $18.50 per hour.

35.     Cresco's Cultivation and Processing jobs are full-time positions and they typically
are required to work 40 or more hours in a workweek.

36.     Throughout Plaintiffs' employment with Cresco, Plaintiffs routinely worked more
than 40 hours in a workweek.

37.     Cresco provided training to Cultivation and Processing Employees on, *inter alia*,
how to carry out their day-to-day job responsibilities, schedule and attendance expectations, and
Cresco policies. The training that all of Cresco's Cultivation and Processing Employees received
was substantially, if not entirely, the same.

38.     Likewise, Plaintiffs and the similarly situated Cultivation and Processing
Employees all shared, *inter alia*, similar job duties, job titles, compensation plans, job descriptions,
and job requirements.

A.     **Cresco Required Plaintiffs and Similarly Situated Employees to Wear Company-Issued Protective Clothing and Safety Equipment During Their Work Shifts**

---

[6] *See* https://sec.report/Document/0001193125-21-061465/ (last visited September 14, 2022).

39.     Due to the nature of its operations, Cresco required Plaintiffs and the Cultivation and Processing Employees to wear company-issued PPE during their work shifts in order to protect the cannabis and cannabis products from contamination and to comply with federal and state governmental safety, health and food regulations and mandates.

40.     Cresco required Plaintiffs and the Cultivation and Processing Employees to don and doff the PPE before and after their scheduled work shifts in designated locations at the worksite.

41.     Cresco required Plaintiffs and the Cultivation and Processing Employees to use onsite lockers and changing facilities so that they could don and doff the PPE at the worksite.

42.     Cresco prohibited Plaintiffs and the Cultivation and Processing Employees from donning or doffing the PPE at home.

43.     Before each shift, Cresco furnished Plaintiffs and similarly situated employees with freshly laundered scrubs, masks, hair nets, arm sleeves, and gloves. Cresco likewise supplied Plaintiffs and similarly situated employees with a pair of protective shoes that they wore each shift and stored in their lockers.

44.     Cresco prohibited Plaintiffs and similarly situated employees from entering the work areas – including the cultivation room, the kitchen, the laboratory, the packaging room, the processing room, or the curing room – without wearing the PPE.

45.     Cresco prohibited Plaintiffs and similarly situated employees from exiting the work areas – including the cultivation room, the kitchen, the laboratory, the packaging room, the processing room, and the curing room – without doffing their masks, hair nets, arm sleeves, and gloves and disposing the items in the trash bin.

46.     Cresco prohibited Plaintiffs and similarly situated employees from leaving the

facility without doffing the PPE and changing back into their personal street clothes.

47.     Plaintiffs and the similarly situated Cultivation and Processing Employees donned and doffed the same or substantially similar PPE, regardless of their particular job title and regardless of whether they worked in the cultivation room, the kitchen, the laboratory, the packaging room, the processing room, or the curing room.

48.     Plaintiffs and the similarly situated Cultivation and Processing Employees utilized the same changing facilities to don and doff the PPE, regardless of their particular job title and regardless of whether they worked in the cultivation room, the kitchen, the laboratory, the packaging room, the processing room, or the curing room.

49.     Plaintiffs and the similarly situated Cultivation and Processing Employees punched in and out for their shifts using the same timekeeping system, regardless of their particular job title and regardless of whether they worked in the cultivation room, the kitchen, the laboratory, the packaging room, the processing room, or the curing room.

50.     Plaintiffs and similarly situated employees used to punch in and out for their shifts on their personal mobile devices using the ADP application. Most recently, Plaintiffs and similarly situated employees punched in and out for their shifts using a time clock that was located beyond the locker rooms.

51.     Cresco issued identification cards to Plaintiffs and similarly situated employees, which Plaintiffs and similarly situated employees were required to use when entering and exiting the facility and when travelling throughout the facility.

**B. <u>Pre-Shift Off-the-Clock Work</u>**

52.      Pursuant to Cresco's policies and procedures, and before clocking in and beginning the donning process, Plaintiffs and similarly situated employees were required to check in at the

nurse station, answer seven or eight questions from the nurse, and pass a temperature check. Because all employees working the same shift would often arrive at or around the same time, Plaintiffs and similarly situated employees frequently had to stand in line at the nurse station and wait their turn to participate in the health screening and receive the nurse's clearance. The nurse check process took approximately 10 to 30 minutes, depending on the length of the line in which Plaintiffs had to stand.

53.     After passing the mandatory health screening, Plaintiffs and similarly situated employees had to walk to Cresco's shipping containers located in the main parking lot to obtain appropriately sized scrubs to wear for their shift. The shipping containers were dark and Plaintiffs and other similarly situated employees had to sift through an array of scrubs to find their size. Plaintiffs and other similarly situated employees then proceeded to Cresco's building and swiped a badge swipe to enter, a function that primarily benefited Cresco by allowing Cresco to monitor access to the facility, the cannabis, and the cannabis products. It took Plaintiffs and similarly situated employees approximately 15 to 30 minutes to find and collect their scrubs and access Cresco's building.

54.     Plaintiffs and similarly situated employees then had to travel throughout the Cresco facility to reach their lockers located in the hallway. This process, which took another five to 10 minutes, included walking up a flight of stairs, riding an elevator, and/or walking throughout the facility.

55.     After traveling throughout the facility but before clocking in, Plaintiffs and similarly situated employees spent approximately 10 to 30 minutes each day opening their lockers; retrieving their protective shoes which were stored in their lockers; stowing some of their personal belongings in their lockers; walking from their lockers to the changing room and waiting for a

10

vacant changing room stall; donning their scrubs and protective shoes in the changing room; returning to their lockers to stow their personal clothing; and walking from their lockers to bins containing masks, hair nets, arm sleeves, and gloves, where they would collect and don the aforementioned PPE.

56.     When Cresco's time clock timekeeping system was in effect, Plaintiffs and similarly situated employees had to walk to the time clock before they could clock in, a task that took an additional three to five minutes to complete.

57.     Cresco required Plaintiffs and similarly situated employees to don the PPE prior to punching in and before the start of their scheduled work shifts so that they could report to their assigned work areas promptly at their scheduled start times and with all the PPE on.

58.     Consequently, Plaintiffs and similarly situated employees had to initiate the mandatory health screening, scrub and PPE collection, and mandatory pre-shift donning process *before* clocking in.

59.      The above described policies resulted in Plaintiffs and similarly situated employees not being paid for the above described mandatory pre-shift work activities.

## C.  Meal-Period Off-the-Clock Work

60.     Cresco promised Plaintiffs and similarly situated employees one unpaid 30-minute meal period each shift.

61.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *<u>completely relieved</u>* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period.

A shorter period may be long enough under special conditions. The employee is
not relieved if he is required to perform any duties, whether active or inactive, while
eating. For example, an office employee who is required to eat at his desk or a
factory worker who is required to be at his machine is working while eating.

62.     Cresco did not provide Plaintiffs and similarly situated employees with bona fide
meal periods because it required them to return to their work areas prior to the end of their unpaid
meal breaks and to spend off-the-clock time retrieving and donning a fresh set of face masks, hair
nets, arm sleeves, and gloves so that they could resume performing their assigned work duties
promptly at the end of their scheduled lunch breaks.

63.     This policy resulted in Plaintiffs and similarly situated employees performing at
least 10 to 15 minutes of unpaid meal-period work each day. The amount of time it took Plaintiffs
to perform the above described work activities varied depending on the number of individuals
returning from or starting their lunch breaks and/or concluding their shift for the day.

**D.  Post-Shift Off-the-Clock Work**

64.     At the end of each shift and after clocking out, Plaintiffs and similarly situated
employees spent approximately 15 to 20 minutes doffing their masks, hair nets, arm sleeves, and
gloves; placing the aforementioned items in a trash bin; walking to their lockers to retrieve their
personal clothing; walking from their lockers to the changing room and waiting for a vacant
changing room stall; doffing their scrubs and protective shoes and placing the scrubs in the
changing room hamper; and, finally, walking back to their lockers to store their protective shoes
and retrieve their personal belongings.

65.     These policies resulted in Plaintiffs and similarly situated employees not being paid
for their mandatory post-shift doffing activities.

66.     Since Plaintiffs and similarly situated employees regularly worked 40 or more
hours per week, these policies also deprived them of overtime pay.

**E. Cresco Had Valid and Binding Contracts with its Cultivation and Processing Employees, which Cresco Breached in Failing to Pay Plaintiffs and the Cultivation and Processing Employees Their Regular Hourly Rates of Pay for Each Hour Worked and Their Overtime Rates of Pay for Each Hour of Overtime Worked**

67.     Prior to hiring, Cresco provided prospective Cultivation and Processing Employees with a written offer setting forth the start date, title/reporting/hours (job requirements), offered rate of pay, benefits, and conditions of employment.

68.     Cresco maintains documents demonstrating the promised hourly wage for each Cultivation and Processing Employee, including, but not limited to: offer letters, paystubs, and/or other payroll records.

69.     Plaintiffs received such an offer from Cresco to work as a Cultivation and Processing Employee. More specifically, on February 3, 2020, Cresco, through Defendant JDRC Managed Services, LLC HR Director Emily Gillespie, offered Plaintiff Emperor the opportunity to work as a Cultivation Agent at an hourly rate of $16.00. In or around July 2020, Cresco made a similar offer to Plaintiff Monroe to work as a Cultivator at an hourly rate of $16.00.

70.     In consideration for Plaintiffs' work as Cultivation and Processing Employees, Cresco promised to pay Plaintiffs the aforementioned hourly wage for each hour they worked for Cresco, as well as "any overtime pay required by applicable law."

71.     Plaintiffs accepted Cresco's offers of employment with the understanding that their base hourly rate would be paid for all hours worked under 40, and 1.5 times their hourly rate would be paid for all hours worked over 40 in a workweek. More specifically, Plaintiffs Emperor and Monroe accepted Cresco's offers on February 3, 2020 and in or around July 2020, respectively. Plaintiffs' acceptance created a binding and valid contract between Plaintiffs and Cresco.

72.     Plaintiffs performed and fulfilled their duties under their contracts with Cresco by carrying out their job responsibilities, which included, but were not limited to, participation in

Cresco's health screening, retrieving scrubs and other PPE necessary for their scheduled shift, and engaging in the mandatory pre-shift, meal-period, and post-shift donning and doffing activities described herein.

73.     However, throughout Plaintiffs' entire employment with Cresco, Cresco repeatedly and systematically breached its contracts with Plaintiffs by not paying Plaintiffs their regular hourly rates of pay, plus any overtime pay required by applicable law, for their participation in the mandatory health screenings, scrub and PPE retrieval, and their mandatory pre-shift, meal-period, and post-shift donning and doffing activities described herein.

74.     Cresco's failure to pay Plaintiffs for each hour of work they performed and that was required of them as Cultivation and Processing Employees, as well as applicable overtime, was a material breach by Cresco.

75.     As a result of Cresco's breaches, Plaintiffs were deprived of wages owed to them under the contracts, including unpaid "gap time" wages[7] and unpaid overtime.

76.     Upon information and belief, all of the other Cultivation and Processing Employees who worked for Cresco had similar valid contracts with Cresco.

77.     Upon information and belief, Cresco repeatedly and systematically breached its contracts with all the other Cultivation Employees it employed in the same way that it breached its contracts with Plaintiffs.

78.     Cresco's contractual promises to pay Plaintiffs' and each Cultivation and Processing Employee's applicable hourly rate for each hour worked and 1.5 times their applicable hourly rate for all overtime worked, is evidenced by, among other things, each earnings statement issued to

---

[7] "Gap time" refers to time that is not covered by the FLSA's overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the FLSA's minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked.

Plaintiffs and the Cultivation and Processing Employees.

79.     Plaintiffs and the Cultivation and Processing Employees are owed wages at their applicable hourly wage rates for the time that they worked off-the-clock during their employment with Cresco, including unpaid "gap time" wages and overtime wages.

80.     Plaintiffs and the Cultivation and Processing Employees earned these wages the moment they performed the off-the-clock work, and the wages were due to be paid to Plaintiffs and the Cultivation and Processing Employees no later than the pay day for the period in which the off-the-clock work was performed.

81.     Despite the fact that Plaintiffs and the Cultivation and Processing Employees performed the off-the-clock work before and after their scheduled work shifts, these off-the-clock hours were not peripheral tasks for which they were not owed additional compensation. Instead, the off-the-clock work, which was performed by Plaintiffs and the Cultivation and Processing Employees pursuant to Cresco's express instructions, constituted principal work activities that were integral and indispensable to their work and required to be performed at the worksite, and Cresco was contractually obligated to pay the Cultivation and Processing Employees for this time at the applicable regular and overtime hourly rates at which they were employed.

82.     The fact that Cresco deliberately chose not to pay Plaintiffs and the Cultivation and Processing Employees for this work, and the fact that the off-the-clock work was performed before and after the Cultivation and Processing Employees' scheduled work shifts does not somehow relieve Cresco of its contractual obligations to pay them for this time.

83.     Cresco was contractually obligated to pay Plaintiffs and the Cultivation and Processing Employees their applicable rates of pay for *all hours worked*, including hours worked before after their scheduled work shifts, plus applicable overtime.

**F.** **Cresco Benefitted from Plaintiffs and the Cultivation and Processing Employees'**
**Mandatory Pre-Shift, Meal-Period, and Post-Shift Work Activities**

84.     At all relevant times, Cresco directed and directly benefited from the mandatory pre-shift, meal-period, and post-shift work activities performed by Plaintiffs and the Cultivation and Processing Employees.

85.     At all relevant times, Cresco controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and the Cultivation and Processing Employees.

86.     At all relevant times, Cresco was able to track the amount of time Plaintiffs and the Cultivation and Processing Employees spent in connection with the mandatory pre-shift, meal-period, and post-shift work activities described herein. However, Cresco failed to do so and chose not to pay Plaintiffs and the Cultivation Employees for their pre-shift, meal-period, and post-shift work.

87.     At all relevant times, Plaintiffs and the Cultivation and Processing Employees were non-exempt employees, subject to the requirements of the FLSA and applicable state laws.

88.     At all relevant times, Cresco used its attendance and adherence policies against Plaintiffs and the Cultivation and Processing Employees in order to pressure them into performing the mandatory pre-shift, meal-period, and post-shift work activities without pay.

89.     More specifically, Cresco's Attendance Policy stated that Cresco "expect[ed] that employees w[ould] be reliable and punctual when reporting for scheduled work" and "w[ould] responsibly manage their attendance and punctuality." The policy outlined a point system, pursuant to which Plaintiffs and other similarly situated employees would be given the following pre-determined point values for the following circumstances:

| CIRCUMSTANCE | OCCURRENCE VALUE |
|---|---|

| | |
|---|---|
| Late arrival / early departure of less than 30 minutes | .5 |
| Late arrival / early departure of 30 minutes or more | 1 |
| Absent (not due to illness) | 1 |
| Absent up to 3 consecutive workdays due to the same illness | 1 |
| Late Notice | .5 |

90.    The aforementioned point system worked in conjunction with Cresco's Progressive Disciplinary Process, which was "measured in a 6-month rolling period." According to Cresco's Attendance Policy, the Progressive Disciplinary Process "typically involve[d] multiple steps; however, [Cresco] reserve[d] the right to escalate disciplinary action when absences accumulate frequently, or attendance is critical to the business… Progressive discipline for attendance [was] [to] be administered once per level based upon the occurrence total:

| CIRCUMSTANCE | OCCURRENCE VALUE |
|---|---|
| 1 – 1.5 | Verbal Warning |
| 2 – 2.5 | Written Warning |
| 3 – 3.5 | Final Written Warning |
| 4+ | Termination of Employment |
| Job Abandonment | If an employee misses three (3) or more consecutive days of work without personally communicating with their supervisor/manager, employment may be terminated for job abandonment. |

91.    At all relevant times, Cresco's attendance and timekeeping policies required Plaintiffs and other similarly situated employees to be ready for their shifts the moment the shift began.  In order to do that, Plaintiffs and the Cultivation and Processing Employees had to perform work off-the-clock and without compensation.

92.    At all relevant times, Cresco's policies and practices deprived Plaintiffs and the Cultivation and Processing Employees of wages owed for the mandatory pre-shift, meal-period, and post-shift work activities they performed. Because Plaintiffs and the Cultivation and

17

Processing Employees regularly worked 40 hours or more per week, Cresco's policies and practices also deprived them of overtime pay.

93.     Cresco knew or should have known that the mandatory pre-shift, meal-period, and post-shift work activities performed by Plaintiffs and the Cultivation and Processing Employees were compensable under the law.

94.     Despite knowing Plaintiffs and the Cultivation and Processing Employees performed work before and after their scheduled work shifts and during their unpaid meal breaks, Cresco failed to make any effort to stop or disallow the off-the-clock work but instead suffered, permitted, and required it to happen.

95.     Unpaid wages related to the mandatory pre-shift, meal-period, and post-shift work activities described herein are owed to Plaintiffs and the Cultivation and Processing Employees at the FLSA-mandated overtime premium of 1.5 times the regular hourly rates at which they were employed because Plaintiffs and the Cultivation and Processing Employees regularly worked 40 hours or more per week.

**JOINT EMPLOYMENT ALLEGATIONS**

96.     At all relevant times, Defendants were, at minimum, joint employers of Plaintiffs and other Cultivation and Processing Employees that worked in Cresco's production facilities and dispensaries.

97.     For example, the offer letters Defendants provided to Plaintiffs stated, "It is my pleasure to offer you a position with JDRC Managed Services, LLC (the 'Company'), **the employer of record for Cresco Labs, LLC ('Cresco')**". (emphasis added). Throughout the offer letters, which were sent from Defendant JDRC Managed Services, LLC HR Director Emily Gillespie, Gillespie repeatedly used the words "our" and "we" to refer to Defendants JDRC Managed Services, LLC and Cresco Labs, LLC: "This letter summarizes the terms of **our** offer of

18

employment. If you accept **our** offer, and subject to the conditions described below:"; "While **we** look forward to a mutually rewarding, long-term relationship…"; "This offer is conditioned upon (a) your consent to a background check and **our** satisfaction with the results…" (emphasis added).

98.    The offer letters additionally contained a "CRESCO LABS" heading followed by the Cresco Labs website: www.crescolabs.com.

99.    Additionally, the Employment Agreement into which Plaintiffs entered with Defendant JDRC Managed Services, LLC, notes language clearly illustrating a joint employment relationship: "the Company [Defendant JDRC Managed Services, LLC], together with its Affiliates[8] (defined herein), is a nationally-recognized company engaged in the cultivation and manufacturing of medical cannabis"; "Employee will devote his/her best efforts and all of his/her business time and attention to the performance of Employee's duties for the Company **and the Affiliates** and will diligently, faithfully, and competently perform his/her duties hereunder."; "The Company's **and the Affiliates' relationships** with their Business Partners are the products of a substantial investment of time, energy, and resources, and the Company and the Affiliates historically have been successful in their efforts to enter into and maintain long-term, successful relationships with **their** Business Partners." (emphasis added).

100.    The language in Defendants' Employee Handbook, to which Plaintiffs and other similarly situated employees were to adhere throughout their employment, is also comprised of repeated references to a joint employment relationship between Defendants. For instance, the bottom of each page of the Employee Handbook notes "**JDRC MANAGED SERVICES, LLC | CRESCO LABS | EMPLOYEE HANDBOOK**." (emphasis in original). The Employee

---

[8] The Employment Agreement defines "Affiliate" as "any person or entity controlling, controlled by, or under common control with, the Company [JDRC Managed Services, LLC] including, but not limited to Cresco Yeltrah and Cresco Labs, LLC."

Handbook also states: "JDRC and Cresco Labs is an Equal Opportunity Employer."

101.   According to Defendants' offer letters, "Cresco's management team" held the authority to "review[] and adjust[] [the Plaintiffs' and Cultivation and Processing Employees' hourly rates] from time to time."

102.   At all relevant times, Defendants managed the day-to-day supervision and direction of the Cultivation and Processing Employees.

103.   At all relevant times, Defendants' corporate policies and procedures, including their joint Employee Handbook dictated, guided and mandated Plaintiffs and the Cultivation and Processing Employees' jobs.

104.   At all relevant times, Defendants maintained the Plaintiffs and other Cultivation and Processing Employees' employment records.

105.   The unlawful conduct at issue in this case arises from Defendants' corporate policies for Cultivation and Processing Employees.

## COMMON ENTERPRISE ALLEGATIONS

106.   "[T]wo or more individuals, entities or business units are considered a single enterprise if (1) they perform related activities; (2) through unified operation or common control, and (3) for a common business purpose." *Villareal v. El Chile, Inc.*, 776 F.Supp.2d 778, 791 (N.D.Ill. 2011)

107.   As discussed herein, Defendants were engaged in a common enterprise relative to the operations and employment of Plaintiffs and Cultivation and Processing Employees. More specifically, and as alleged herein, Defendants represented themselves as being "a nationally-recognized company engaged in the cultivation and manufacturing of medical cannabis."

108.   Defendants were engaged in the aforementioned business for the joint purpose of selling and distributing their cannabis products nationwide.

109.     As discussed herein, Defendants loosely operated in the same or similar manner, under a common name, and through unified or common control. They also advertised collectively as Creso Labs ™.

## FLSA COLLECTIVE ACTION ALLEGATIONS

110.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> ***All current and former non-exempt employees who worked for Cresco at any of its locations at any time during the three years preceding the filing of this Complaint up through and including judgment and who were required to don and doff protective clothing or safety equipment at the worksite before and after their scheduled work shifts.***

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

111.     Cresco is liable under the FLSA for, *inter alia*, failing to properly pay Plaintiffs and the FLSA Collective.

112.     Excluded from the proposed FLSA Collective are Cresco's executives, administrative, and learned professional employees, including computer professionals and outside salespersons.

113.     Consistent with Cresco's policy and pattern or practice, Plaintiffs and the FLSA Collective were not paid premium overtime compensation when they worked over 40 hours in a workweek.

114.     Cresco assigned and/or was aware of all the work that Plaintiffs and the FLSA Collective performed.

115.     As part of its regular business practices, Cresco intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective. This policy and pattern or practice includes, but is not limited

to:

    a.    Willfully failing to pay Plaintiffs and the FLSA Collective premium
          overtime wages for all hours worked in excess of 40 hours per workweek;
          and

    b.    Willfully failing to record all of the time that Plaintiffs and the FLSA
          Collective worked for the benefit of Cresco.

116.    Cresco is aware or should have been aware that federal law required it to pay
overtime premiums to Plaintiffs and the FLSA Collective for all hours worked in excess of 40 per
workweek.

117.    Cresco's unlawful conduct has been widespread, repeated, and consistent.

118.    A collective action under the FLSA is appropriate because the employees described
above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of
whom Plaintiffs bring this collective action are similarly situated because (a) they have been or
are employed in the same or similar positions; (b) they were or are performing the same or similar
job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan;
and (d) their claims are based upon the same factual and legal theories.

119.    The employment relationships between Cresco and every proposed FLSA
Collective member are the same. The key issue – the amount of unpaid pre-shift, meal-period, and
post-shift time – does not vary substantially among the proposed FLSA Collective members.

120.    Many similarly situated current and former employees have been underpaid in
violation of the FLSA and would benefit from the issuance of a Court-supervised notice of this
lawsuit and the opportunity to join it.

121.    Court-supervised notice of this lawsuit should be sent to the FLSA Collective
pursuant to 29 U.S.C. § 216(b).

122.    Those similarly situated employees are known to Cresco, are readily identifiable,

and can be located through Cresco's records.

123.     Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds of workers. The precise number of FLSA Collective members should be readily ascertainable from a review of Cresco's personnel and payroll records.

124.     The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Cresco.

## RULE 23 ILLINOIS CLASS ACTION ALLEGATIONS

125.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of:

> *All current and former non-exempt employees who worked for Cresco in Illinois during the applicable statutory period and who were required to don and doff protective clothing or safety equipment at the worksite before and after their scheduled work shifts.*

(hereinafter referred to as the "Rule 23 Illinois Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

126.     The Rule 23 Illinois Class members are so numerous that joinder of all Rule 23 Illinois Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds of Rule 23 Illinois Class members. Rule 23 Illinois Class members should be easy to identify from Cresco's computer systems and electronic payroll and personnel records.

127.     There is a well-defined community of interest among Rule 23 Illinois Class members and common questions of law and fact predominate in this action over any questions

23

affecting individual Rule 23 Illinois Class members. These common legal and factual questions include, but are not limited to:

    a.   Whether Rule 23 Illinois Class members performed unpaid pre-shift, meal-period, and post-shift work activities, and if so, whether such work activities are compensable; and

    b.   Whether Rule 23 Illinois Class members are owed wages for time spent performing pre-shift, meal-period, and post-shift work activities, and if so, the appropriate amount thereof.

128.    Plaintiffs' claims are typical of the Rule 23 Illinois Class members' claims because Plaintiffs and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of Cresco's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Illinois Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Illinois Class members.

129.    Plaintiffs will fully and adequately protect the Rule 23 Illinois Class members' interests and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel has interests that are contrary to, or conflicting with, the Rule 23 Illinois Class members' interests.

130.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

131.    This case will be manageable as a Rule 23 class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Cresco has advanced, networked computer and

payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

132.    Because the elements of Fed. R. Civ. P. 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

133.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of:

> *All current and former non-exempt employees who worked for Cresco during the applicable statutory period and who were required to don and doff protective clothing or safety equipment at the worksite before and after their scheduled work shifts.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

134.    The Rule 23 Nationwide Class members are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Cresco's computer systems and electronic payroll and personnel records.

135.    There is a well-defined community of interest among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual Rule 23 Nationwide Class members. These common legal and factual questions include, but are not limited to:

> a.   Whether Rule 23 Nationwide Class members performed unpaid pre-shift, meal-period, and post-shift work activities, and if so, whether such work activities are

compensable;

b. Whether Rule 23 Nationwide Class members are owed wages for time spent performing pre-shift, meal-period, and post-shift work activities, and if so, the appropriate amount thereof; and

c. Whether Cresco's non-payment of wages for all compensable time constitutes breach of contract or unjust enrichment.

136. Plaintiffs' claims are typical of the Rule 23 Nationwide Class members' claims because Plaintiffs and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of Cresco's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

137. Plaintiffs will fully and adequately protect the Rule 23 Nationwide Class members' interests and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel has interests that are contrary to, or conflicting with, the Rule 23 Nationwide Class members' interests.

138. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

139. This case will be manageable as a Rule 23 class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Cresco has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with

26

relative ease.

140.    Because the elements of Fed. R. Civ. P. 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates*, 559 U.S. at 398 ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201 *et seq.* – FAILURE TO PAY OVERTIME**

141.    Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

142.    At all times relevant to this action, Cresco was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

143.    At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Cresco within the meaning of 29 U.S.C. § 203(e)(1).

144.    At all relevant times, Defendants jointly employed Plaintiffs and all other members of the FLSA Collective within the meaning of the FLSA.

145.    Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, were all non-exempt employees.

146.    Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

147.    At all times relevant to this action, Cresco "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g).

148.    At all times relevant to this action, Cresco required Plaintiffs and the FLSA

Collective to perform mandatory pre-shift, meal-period, and post-shift work activities, as described herein, but failed to pay these employees the federally mandated overtime compensation for the pre-shift, meal-period, and post-shift work.

149. The mandatory pre-shift, meal-period, and post-shift work activities performed every shift by Plaintiffs and the FLSA Collective were an essential part of their jobs, and these activities and the time associated with these activities were not *de minimis*.

150. In workweeks where Plaintiffs and other FLSA Collective members worked over 40 hours, the unpaid pre-shift, meal-period, and post-shift time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly rate of pay, including shift differential pay, nondiscretionary incentive pay, and all other non-excludable remuneration. *See* 29 U.S.C. §§ 207(a) & (e).

151. Cresco's violations of the FLSA were knowing and willful. Cresco knew or could have determined how long it took Plaintiffs and the FLSA Collective to perform their mandatory pre-shift, meal-period, and post-shift work. Further, Cresco could have easily accounted for and paid Plaintiffs and the FLSA Collective for these work activities but deliberately chose not to.

152. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated (i.e., double) damages, plus costs and reasonable attorneys' fees.

**COUNT II**
**RULE 23 ILLINOIS CLASS ACTION**
**VIOLATION OF ILLINOIS MINIMUM WAGE LAW ("IMWL"),**
**§§ 820 ILCS 105/1, *et seq*. AND ILLINIOS WAGE PAYMENT AND COLLECTION ACT**
**("IWPCA"), §§ ILCS 115/1, *et seq*.**

153. Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

154.    At all times relevant to the action, Cresco was an employer covered by the mandates of the IMWL, and Plaintiffs and the Rule 23 Illinois Class were employees entitled to the IMWL's protections. *See* §§ 820 ILCS 105/3(c)-(d).

155.    The IMWL, §§ 820 ILCS 105/1, *et. seq*. requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay for hours worked in excess of 40 per week. *See* §§ 820 ILCS 105/4; 820 ILCS 105/4a.

156.    820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." § 820 ILCS 105/12(a).

157.    The IWPCA "applies to all employers and employees in [Illinois], … but excepting employees of the State or Federal governments." *See* §§ 820 ILCS 115/1. Plaintiffs and the Rule 23 Illinois Class were not employees of the State or Federal government, therefore, they are entitled to the protections of the IWPCA.

158.    Under 820 ILSC 115/4, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."

159.    Under 820 ILSC 115/5, "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."

160.    As discussed herein, Cresco had a binding and valid contract with Plaintiffs and every other Rule 23 Illinois Class member to pay each employee for each hour they worked at a

pre-established (contractual) regular hourly rate, plus any overtime pay required by applicable law, in consideration of the work duties Plaintiffs and the Rule 23 Illinois Class members performed on Cresco's behalf.

161. For example, Cresco offered to compensate Plaintiffs Emperor and Monroe at a minimum of $16.00 per hour, plus any overtime pay required by applicable law, if they agreed to perform services for Cresco as a Cultivation Agent and a Cultivator, respectively. Plaintiffs Emperor and Monroe accepted Cresco's offers and performed under the contracts by fulfilling their duties as a Cultivation Agent and Cultivator, respectively, which included, but was not limited to, the pre-shift, meal-period, and post-shift work activities required of them, in reliance on the offers.

162. Evidence of these contracts include Cresco's letters offering employment, the Cresco Employee Handbook, pay statements, and other documentary evidence in Cresco's possession. Additionally, Cresco made verbal offers for payment at a specified, above minimum wage for cultivation and processing work, which Plaintiffs accepted and performed, including the unpaid pre-shift, meal-period, and post-shift work activities described herein, but Cresco failed to perform by paying Plaintiffs and the Rule 23 Illinois Class the promised wages for all work.

163. Upon information and belief, each Rule 23 Illinois Class member, including Plaintiffs, was contractually entitled to a minimum hourly rate of approximately $16.00 to $18.50 per hour within the applicable period, in addition to applicable overtime premiums.

164. Plaintiffs and every other Rule 23 Illinois Class member accepted the terms of Cresco's contractual promises contained in Cresco's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift, meal-period, and post-

shift work described herein.

165.   Cresco breached its contractual promises by failing to pay Plaintiffs and the Rule 23 Illinois Class for all wages (regular and overtime) owed.

166.   Plaintiffs and the Rule 23 Illinois Class also did not receive accurate wage statements that detailed each hour worked and their rate of pay because Cresco failed to include the compensable time discussed herein in the paystubs provided to Plaintiffs and the Rule 23 Illinois Class.

167.   820 ILCS 115/9 prohibits "deductions by employers from wages or final compensation." Accordingly, in workweeks that Cresco unilaterally altered time records to exclude the pre-, mid-, and/or post-shift activities discussed herein, Defendants violated 115/9 of the IWPCA.

168.   Additionally, 820 ILCS 115/14(a) provides that an employee aggrieved by an employer's violation of the Illinois Wage Payment and Collection Act "shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

169.   Cresco violated the IMWL and the IWPCA by regularly and repeatedly failing to compensate Plaintiffs and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint.

170.   As a result, Plaintiffs and the Rule 23 Illinois Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiffs and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate

relief under the IMWL at an amount to be proven at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

171.    Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

172.    At all times relevant to this action, Cresco had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate, plus overtime pay for hours worked over 40 in a workweek, in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on Cresco's behalf.

173.    For example, Cresco offered to compensate Plaintiffs Emperor and Monroe at a minimum of $16.00 per hour plus applicable overtime premiums if they agreed to perform services for Cresco as a Cultivation Agent and a Cultivator, respectively. Plaintiffs Emperor and Monroe accepted Cresco's offers and performed under the contracts by fulfilling their duties as a Cultivation Agent and a Cultivator, respectively, which included, but was not limited to, the pre-shift, meal-period, and post-shift work activities required of him, in reliance on the offers.

174.    Evidence of these contracts include Cresco's letters offering employment, pay statements, Cresco's Employee Handbook, and other documentary evidence in Cresco's possession. Additionally, Cresco made verbal offers for payment at a specified, above minimum wage for cultivation and processing work, which Plaintiffs accepted and performed, including the unpaid pre-shift, meal-period, and post-shift work activities described herein, but Cresco failed to perform by paying Plaintiffs and the Rule 23 Nationwide Class the promised wages for all work.

175.    Upon information and belief, each Rule 23 Nationwide Class member, including

Plaintiffs, was contractually entitled to a minimum hourly rate of approximately $16.00 to $18.50 per hour within the applicable period.

176.     Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Cresco's contractual promises contained in Cresco's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift, meal-period, and post-shift work described herein.

177.     Cresco breached its contractual promises by failing to pay Cultivation and Processing Employees at their fixed, agreed upon hourly rate for *all* of the hours worked.

178.     By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Cresco systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

179.     Cresco can easily ascertain the amount of damages owed to Plaintiffs and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Cresco's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

180.     Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Cresco paid them ***more*** than the federally mandated minimum wage of $7.25 per hour, but less than 40 hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

181.     Cresco also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Nationwide Class members spent performing off-the-clock

activities, which is a fundamental part of an "employer's job."

182.    As a direct and proximate result of Cresco's contractual breaches, Plaintiffs and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

### COUNT IV
### RULE 23 NATIONWIDE CLASS ACTION
### UNJUST ENRICHMENT

183.    Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

184.    This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

185.    At all times relevant to this action, Cresco promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of Cresco.

186.    Plaintiffs and every other Rule 23 Nationwide Class member relied upon Cresco's promise for the pre-established hourly rate and performed by doing their jobs and carrying out their required work duties.

187.    Cresco received a benefit from the mandatory pre-shift, meal-period, and post-shift work in that these services protected the cannabis and cannabis products from contamination, and to allowed Cresco to comply with federal and state governmental safety, health, and food regulations and mandates.

188.    Despite this, Cresco did not pay the Plaintiffs and the Rule 23 Nationwide Class members for these services.

189.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the mandatory pre-shift, meal-period, and post-shift work they

performed before and after each shift, Cresco was unjustly enriched.

190.     Plaintiffs and the Rule 23 Nationwide Class members performed mandatory pre-shift, meal-period, and post-shift work activities at the request of, without objection by, and for the benefit of, Cresco.

191.     Cresco received and accepted the pre-shift, meal-period, and post-shift work from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom, including increased profits, without having paid for the same.

192.     Upon information and belief, Cresco used the monies owed but not paid to Plaintiffs and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

193.     Cresco has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Class members performed for Cresco's benefit, without having paid Plaintiffs and the Rule 23 Nationwide Class members for the same.

194.     Plaintiffs and the Rule 23 Nationwide Class members suffered detriment due to Cresco's failure to pay them for the mandatory pre-shift, meal-period, and post-shift work activities described herein, in that Plaintiffs and the Rule 23 Nationwide Class members were deprived of the ability to utilize that time, effort, and their resources in a profitable manner.

195.     As a direct and proximate result of Cresco's actions, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the putative FLSA Collective, the Rule 23 Illinois Class, and the Rule 23 Nationwide Class, request the following relief:

a.   An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Illinois Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's state law claims under the IMWL and IWPCA (Count II);

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

d. An Order compelling Cresco to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, and authorizing Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

e. An Order designating Plaintiffs Emperor and Monroe as representatives of the FLSA Collective, the Rule 23 Illinois Class, and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

f. An Order declaring Cresco violated the FLSA;

g. An Order declaring Cresco's violations of the FLSA were willful;

h. An Order declaring Cresco violated Illinois wage-and-hour law;

i. An Order declaring Cresco breached its contracts with Plaintiffs and the members of the Rule 23 Nationwide Class (or, in the alternative, that Cresco was unjustly enriched) by failing to pay them for mandatory pre-shift, meal-period, and post-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

j. An Order granting judgment in favor of Plaintiffs and against Cresco and awarding Plaintiff, the FLSA Collective, the Rule 23 Illinois Class, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

k. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in prosecuting this action as required by statute;

l. An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

m. An Order awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by and through their

attorneys, hereby demand a trial by jury under Fed. R. Civ. P. 38.


Dated: September 16, 2022                         Respectfully Submitted,

                                                 /s/ *Matthew L. Turner*
                                                 Matthew L. Turner
                                                 Alana A. Karbal
                                                 SOMMERS SCHWARTZ, P.C.
                                                 One Towne Square, 17th Floor
                                                 Southfield, Michigan 48076
                                                 Phone: (248) 355-0300
                                                 Email: mturner@sommerspc.com
                                                 Email: akarbal@sommerspc.com

                                                 Benjamin Knox Steffans (*will petition for admission*)
                                                 Steffans Legal PLLC
                                                 10 Wendell Ave. Ext. Suite 208
                                                 Pittsfield, Massachusetts 01201
                                                 Phone: (413) 418-4176
                                                 Email: bsteffans@steffanslegal.com

                                                 *Attorneys for Plaintiffs and the Putative*
                                                 *Collective/Class Members*